**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GADDIS CANADA a/k/a KAIRA CANADA,** ) | |
| ) | **Case No.** |
| **Plaintiff,** ) | |
| **v.** ) | **Judge** |
| ) | |
| **CHANTE P. HALL, EDWARD DUBAKA,** ) | **Magistrate Judge** |
| **DARMEA S. MCCOY, RICHARD H. PASQUEL** ) | |
| **(Star # 17552), JAMES A. CIUKAJ, JR., CHARLES L.** ) | |
| **GRAY, PETRA GUMBEL-PRITCHETT, GWENELL** ) | **JURY TRIAL DEMANDED** |
| **MCCULLOUGH , LISA M. ROGERS, ABDALLAH** ) | |
| **ABDELHAMID, C.O. ANDERSON (Star # 17361),** ) | |
| **RICHARD BILLINGSLEY, C.O. FREEMAN** ) | |
| **(Star # 16808), SEDRICK GARMON , C.O.** ) | |
| **GONZALEZ (Star # 17293), JOSEPH D. HVORCIK,** ) | |
| **PETER JENSEN, GREGORY KULASA, SEAN** ) | |
| **MICHALCZEWSKI, CARA B. PITTS, C.O. POPP** ) | |
| **(Star # 16251), MICHAEL PUCHACZ, DAMIR RASIC,** ) | |
| **MOSES A. ROSS, ADIS SKENDEROVIC, CASIMIR** ) | |
| **STRUGIELSKI, JR., ERIC TAPPERT , CURTIS** ) | |
| **WEATHERSBY, CARMEN CONSOLINO,** ) | |
| **BERNESSA TATE, NOEL ACOSTA, IRWIN K.** ) | |
| **JOHNSON, NANCY A. ALVAREZ, DAMITA DELITZ,** ) | |
| **ESQUIVEL IRACHETA, JOE E. HURD, COOK** ) | |
| **COUNTY, Illinois, and Cook County Sheriff THOMAS** ) | |
| **DART, in his Official Capacity,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>CIVIL RIGHTS COMPLAINT</u>

Plaintiff, GADDIS CANADA a/k/a KAIRA CANADA (hereinafter "KAIRA"), by and

through her attorney, Irene K. Dymkar, complaining against defendants, CHANTE P. HALL

("HALL"), EDWARD DUBAKA ("DUBAKA"), DARMEA S. MCCOY ("MCCOY"),

RICHARD H. PASQUEL (Star # 17552) ("PASQUEL"), JAMES A. CIUKAJ, JR. ("CIUKAJ"),

CHARLES L. GRAY ("GRAY"), PETRA GUMBEL-PRITCHETT ("GUMBEL-

PRITCHETT"), GWENELL MCCULLOUGH ("MCCULLOUGH"), LISA M. ROGERS

("ROGERS"), ABDALLAH ABDELHAMID ("ABDELHAMID"); C.O. ANDERSON (Star #

17361) ("ANDERSON"), RICHARD BILLINGSLEY ("BILLINGSLEY"), C.O. FREEMAN

(Star # 16808) ("FREEMAN"), SEDRICK GARMON ("GARMON"), C.O. GONZALEZ (Star #

17293) ("GONZALEZ"), JOSEPH D. HVORCIK ("HVORCIK"), PETER JENSEN

("JENSEN"), GREGORY KULASA ("KULASA"), SEAN MICHALCZEWSKI

("MICHALCZEWSKI"), CARA B. PITTS ("PITTS"), C.O. POPP (Star # 16251) ("POPP"),

MICHAEL PUCHACZ ("PUCHACZ"), DAMIR RASIC ("RASIC"), MOSES A. ROSS

("ROSS"), ADIS SKENDEROVIC ("SKENDEROVIC"), CASIMIR STRUGIELSKI, JR.

("STRUGIELSKI"), ERIC TAPPERT ("TAPPERT"), CURTIS WEATHERSBY

("WEATHERSBY"), CARMEN CONSOLINO ("CONSOLINO"), BERNESSA TATE

("TATE"), NOEL ACOSTA ("ACOSTA"), IRWIN K. JOHNSON ("JOHNSON"), NANCY A.

ALVAREZ ("ALVAREZ"), DAMITA DELITZ ("DELITZ"), ESQUIVEL IRACHETA

("IRACHETA"), JOE E. HURD ("HURD"), COOK COUNTY, Illinois, and Cook County

Sheriff THOMAS DART, in his Official Capacity ("DART"), states as follows:

**INTRODUCTION**

1.      Plaintiff KAIRA CANADA is a transgender female who was a pre-trial detainee housed in protective custody in the men's population of Cook County Jail.  However, KAIRA was placed in a cell with Rayshoan Ellison, a male known for violent behavior in the jail.  At intake and while in her cell, KAIRA told correctional officers and correctional sergeants she was transgender and requested that she be placed in a cell by herself or with other transgender females.

2.      Mr. Ellison began making threats of physical violence against KAIRA.  Both KAIRA and Mr. Ellison told correctional officers and sergeants about the threats.  On March 23, 2016, Mr. Ellison attacked KAIRA.  He grabbed her from behind and punched her.  After KAIRA fell to the ground, Mr. Ellison got on top of her and continued beating her.  KAIRA was left in a pool of blood and suffered severe injuries as a result of the attack, including a broken jaw.

3.      Employees of Cook County Sheriff THOMAS DART and COOK COUNTY at the Cook County Jail failed to protect KAIRA from a danger of which they were on notice.  Moreover, DART and COOK COUNTY had policies, procedures, and practices which were the moving force behind the unconstitutional conduct which lead to KAIRA's injuries.

4.      This action arises under the United States Constitution and the laws of the United States, specifically the Civil Rights Act of 1871 (42 U.S.C. § 1983), to redress deprivations of the civil rights of the plaintiff through acts and/or omissions of defendants committed under color of law.  Defendants deprived plaintiff of her rights under the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

5.     Jurisdiction is based upon 28 U.S.C. §§ 1343, 1331, and 1367.

6.     Venue lies in the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. § 1391, because all events or omissions giving rise to this claim occurred in this jurisdiction.

## PARTIES

7.     At all times herein mentioned, plaintiff, GADDIS CANADA a/k/a KAIRA CANADA, was and is a citizen of the United States and the State of Illinois.  Plaintiff is a transgender female and goes by the name KAIRA CANADA.

8.     At all times relevant to the events in this case, defendant correctional officers HALL, PASQUEL, ABDELHAMID, ANDERSON, BILLINGSLEY, FREEMAN, GARMON, GONZALEZ, HVORCIK, JENSEN, KULASA, MICHALCZEWSKI, PITTS, POP, PUCHACZ, RASIC, ROSS, SKENDEROVIC, STRUGIELSKI, TAPPERT, and WEATHERSBY (collectively, "correctional officers") were correctional officers and employees of Cook County Sheriff THOMAS DART and COOK COUNTY at the Cook County Jail and were acting under color of law.  Each defendant correctional officer is being sued in his individual/personal capacity.  Each defendant correctional officer was responsible for overseeing KAIRA's cell block in the jail during the time prior to Mr. Ellison's attack.

9.     At all times herein mentioned, defendants DUBAKA, MCCOY, CIUKAJ, GRAY, GUMBEL-PRITCHETT, MCCULLOUGH, and ROGERS (collectively, "correctional sergeants") were correctional sergeants and employees of Cook County Sheriff THOMAS DART and COOK COUNTY at the Cook County Jail and were acting under color of law.  Each

defendant correctional sergeant is being sued in his individual/personal capacity. Each defendant correctional sergeant was responsible for overseeing KAIRA's cell block in the jail during the time prior to Mr. Ellison's attack.

10.     At all times herein mentioned, defendants ACOSTA, JOHNSON, ALVAREZ, DELITZ, IRACHETA, and HURD (collectively, "correctional lieutenants") were correctional lieutenants and employees of Cook County Sheriff THOMAS DART and COOK COUNTY at the Cook County Jail and were acting under color of law. Each defendant correctional lieutenant is being sued in his individual/personal capacity. Each defendant correctional lieutenant was responsible for overseeing KAIRA's cell block in the jail during the time prior to Mr. Ellison's attack.

11.     At all times herein mentioned, defendants CONSOLINO and TATE (collectively, "correctional commanders") were correctional commanders and employees of Cook County Sheriff THOMAS DART and COOK COUNTY at the Cook County Jail and were acting under color of law. Each defendant correctional commander is being sued in his individual/personal capacity. Each defendant correctional commander was responsible for overseeing KAIRA's cell block in the jail during the time prior to Mr. Ellison's attack.

12.     At all times herein mentioned, defendant Cook County Sheriff THOMAS DART was employed by COOK COUNTY and the Cook County Sheriff's Office in the capacity of Sheriff and was acting under color of law. Defendant is being sued in his official capacity.

13.     At all times relevant to the events at issue in this case, defendant THOMAS DART, as Sheriff of Cook County, was the final policymaker for the Cook County Sheriff's Office and the Cook County Jail.

5

14.     At all times herein mentioned, defendant COOK COUNTY, Illinois, is a county of the State of Illinois.  It oversees the Cook County Sheriff's Office, which, in turn, operates the Cook County Jail.

15.     At all times relevant to the events at issue in this case, defendant Cook County Sheriff THOMAS DART and COOK COUNTY, Illinois, promulgated rules, regulations, policies, and procedures for the training, supervision, and discipline of jail correctional officers and employees with respect to, among other things: (1) detainee intake procedures; (2) assigning and placing detainees in cell blocks and protective custody; (3) communicating or failing to communicate detainee requests to speak to a Sergeant or other member of the Cook County Jail's supervisory staff; and (4) ensuring Cook County Jail's compliance with the Prison Rape Elimination Act ("PREA").  The policies of defendant Cook County Sheriff THOMAS DART and COOK COUNTY, Illinois, were implemented by and through Cook County Jail employees including the individual defendant officers.

## FACTUAL BACKGROUND

16.     On March 5, 2016, plaintiff, KAIRA CANADA, was arrested, and on March 8, 2016, she was processed into the Cook County Jail as a pre-trial detainee.  She was awaiting trial and had not been sentenced for any crime.

17.     Upon arriving at the jail, KAIRA informed Cook County Jail intake officers that she was a transgender female.  A female officer said that KAIRA did not appear to be transgender and that KAIRA looked liked she could handle herself in the jail.

18.     KAIRA was identified as male in jail paperwork, but she was also placed into protective custody because of her transgender status.

6

19.     KAIRA was placed in Division 6 of the jail with a cellmate, Rayshoan Ellison, who was neither transgender nor female.

20.     Prior to March 23, 2017, Mr. Ellison was known by jail officials and the correctional officers, correctional sergeants, correctional lieutenants, and correctional commanders to be a dangerous inmate.

21.     While incarcerated, KAIRA told the defendant correctional officers and defendant correctional sergeants that she was a transgender female.  Defendant correctional officers and defendant correctional sergeants were aware that she was a transgender female.

22.     KAIRA complained to defendant correctional officers and defendant correctional sergeants about her housing arrangements.  She told them that she should be placed by herself or with other transgender females, and that she feared for her safety and needed protection.

23.     In the jail, KAIRA's cellmate, Mr. Ellison, began making threats against her.

24.     On multiple occasions, Mr. Ellison threatened physical violence against KAIRA if she were not removed from their cell.

25.     Prior to March 23, 2016, KAIRA made numerous oral complaints about Mr. Ellison's threats to the defendant correctional officers and defendant correctional sergeants in her cellblock.  She requested to be placed in a cell away from Mr. Ellison.  Defendant correctional officers and defendant correctional sergeants were aware that Mr. Ellison was making serious threats against KAIRA.

26.     Defendant correctional officers said that KAIRA would have to talk to a correctional sergeant.

7

27. Prior to March 23, 2016, KAIRA spoke with defendant correctional sergeant DUBAKA specifically about Mr. Ellison's threats of violence and the urgent need to be moved from the cell with Ellison. But KAIRA was not moved from the cell.

28. Prior to March 23, 2016, KAIRA spoke with defendant correctional sergeant MCCOY specifically about Mr. Ellison's threats of violence and the urgent need to be moved from the cell. But KAIRA was not moved from the cell.

29. Prior to March 23, 2016, Mr. Ellison himself notified defendant correctional officers and defendant correctional sergeants that he intended to harm KAIRA if she were not moved from the cell.

30. On information and belief, the correctional commanders and correctional lieutenants were made aware that KAIRA was a transgender female, that she was housed with Mr. Ellison, that Mr. Ellison was making threats of physical violence against KAIRA, and that she needed to be moved immediately to a different cell.

31. Defendant correctional officers told KAIRA that neither she nor Mr. Ellison would be moved. Instead, the detainees would have to work any problems out between themselves.

32. On March 23, 2016, Mr. Ellison became increasingly vocally aggressive toward KAIRA. Other inmates tried to calm Mr. Ellison down, to no avail.

33. On March 23, 2016, KAIRA informed defendant HALL that Mr. Ellison was making aggressive threats of violence, and she requested again to be moved from the cell.

34. Defendant HALL said he would see what he could do to separate KAIRA and Mr. Ellison but that he would not be moving anyone that night.

8

35. No correctional commander, correctional lieutenant, or correctional sergeant ever discussed with KAIRA making safety arrangements for her.

36. On the night of March 23, 2016, defendant HALL was assigned to a post in Cook County Jail directly responsible for supervising the cell containing KAIRA and Mr. Ellison.

37. On the night of March 23, 2016, HALL left his assigned post for a period of time.

38. On the night of March 23, 2016, while HALL was away from his post, Mr. Ellison attacked KAIRA. He grabbed her from behind and punched her. After she fell to the ground from the force of the blows, Mr. Ellison got on top of her and continued punching her face and beating her.

39. KAIRA suffered severe injuries as a result of the attack.

40. KAIRA briefly blacked out due to the brutality of Mr. Ellison's attack. When she awoke, her face was on the floor in a pool of blood.

41. Mr. Ellison's attack left KAIRA with a broken jaw and bruises covering her face.

42. The Prison Rape Elimination Act (PREA) is a federal statute that placed defendants on notice that transgender inmates are at an increased risk of physical assault and sexual assault in prisons and jails.

43. Defendants disregarded PREA and the substantial and obvious risks of attack in placing a transgender female detainee in a cell with a non-transgender male and/or not removing KAIRA from the cell upon learning that she is a transgender female.

44. KAIRA is currently out of jail custody.

45.     By reason of the above-described acts and omissions of the defendant police officers, KAIRA sustained injuries, humiliation, and indignities, and suffered great physical, mental, and emotional pain and suffering, all to her damage.

46.     The aforementioned acts of defendants were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for plaintiff's rights and justify the awarding of exemplary and punitive damages.

47.     The constitutional violations set forth above were committed pursuant to the unconstitutional policies and practices of defendant Cook County Sheriff THOMAS DART, in his Official Capacity, and COOK COUNTY, Illinois.  There were express policies and implied policies and widespread practices so prevalent as to comprise municipal policy that caused the constitutional violations.  These express policies and implied policies and widespread practices were the moving force behind the constitutional violations.

48.     As a matter of both policy and practice, defendant Cook County Sheriff THOMAS DART, in his Official Capacity, and COOK COUNTY, Illinois directly encouraged, and thereby were the moving force behind, the constitutional violations at issue here by failing to adequately train, supervise, and control its employees.

49.     As a matter of both policy and practice, defendant Cook County Sheriff THOMAS DART, in his Official Capacity, and COOK COUNTY, Illinois, facilitated the very type of misconduct at issue here by failing to adequately supervise and hold accountable its employees, thereby leading them to believe that their actions will never be scrutinized and, in that way, directly encouraged continuing abuses such as those which affected plaintiff.

50.     Because of the above-described acts and omissions of the individual defendants, and because of the unconstitutional policies, procedures, and practices of defendant Cook County Sheriff THOMAS DART, in his Official Capacity, and COOK COUNTY, Illinois, KAIRA was required to retain an attorney to institute, prosecute, and render legal assistance to her in the within action, so that she might vindicate the loss and impairment of her rights.  By reason thereof, KAIRA requests payment by defendants of a reasonable sum for attorneys' fees pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act, or any other provision set by law.

**COUNT I – 42 U.S.C. § 1983 Failure to Protect**
**Against HALL, PASQUEL, ABDELHAMID, ANDERSON, BILLINGSLEY, FREEMAN, GARMON, GONZALEZ, HVORCIK, JENSEN, KULASA, MICHALCZEWSKI, PITTS, POP, PUCHACZ, RASIC, ROSS, SKENDEROVIC, STRUGIELSKI, TAPPERT, WEATHERSBY, DUBAKA, MCCOY, CIUKAJ, GRAY, GUMBEL-PRITCHETT, MCCULLOUGH, ROGERS,  ACOSTA, JOHNSON, ALVAREZ, DELITZ, IRACHETA, HURD, CONSOLINO and TATE ("Individual Defendants")**

51.     Plaintiff hereby incorporates and realleges paragraphs 1 through 50 as though fully set forth herein.

52.     Defendants had a legal obligation to protect Plaintiff from assault and knew that their actions and omissions created a substantial risk of serious injury to KAIRA.

53.     As more fully described above, one or more defendants had a reasonable opportunity to prevent the violation of KAIRA's rights, but failed to do so.

54.     Defendants who were jail supervisor had additional responsibility as supervisors who condoned, facilitated, or turned a blind eye to constitutional violations.

55.     Defendants' actions were done intentionally, with malice and/or reckless indifference to plaintiff's rights.

11

56.     Plaintiff's injuries were caused by defendants, who failed to protect plaintiff from known and specific threats of violence of which they were on notice.

57.     Plaintiff was placed in a jail cell with Mr. Ellison by employees of the Cook County Sheriff's Department who acted pursuant to the policies and practices of the Cook County Sheriff, in placing plaintiff with Mr. Ellison.

58.     As a direct and proximate result of the misconduct described in this complaint, plaintiff's rights were violated and she suffered injuries, including but not limited to physical injuries, pain and suffering, and emotional distress.

## COUNT II  *MONELL* CLAIM
### AGAINST Cook County Sheriff THOMAS DART, in his Official Capacity, and COOK COUNTY, Illinois

59.     Plaintiff hereby incorporates and realleges paragraphs 1 through 58 as though fully set forth herein.

60.     At all times material to this Complaint, there existed at Cook County Jail the following practices, policies, and customs attributable to Cook County Sheriff THOMAS DART and COOK COUNTY:

      a)     Failure by implie policy and/or practice to accurately identify the gender of detainees who present themselves as transgender and failure to train employees on matters of gender identity;

      b)     Failure to promulgate an express policy to determine appropriate housing assignments for identified transgender detainees within a reasonable time of their arrival;

     c)     Failure to promulgate an express policy to remove or protect identified transgender detainees from other detainees who pose an imminent threat of physical violence;

     d)     Promulgating an express policy regarding transgender detainees, Sheriff's Order No.11.5.43.0, that is vague, incomplete, and insufficient to identify, protect, and reasonably accommodate transgender inmates;

     e)     Failure by implied policy and/or practice to communicate detainee requests to speak to a sergeant or other member of the Cook County Jail's supervisory staff;

     f)     Failure by implied policy and/or practice to remove or protect detainees from other detainees who pose an imminent threat of physical violence.

61.     The actions of the individual employees and agents of COOK COUNTY and Cook County Sheriff DART and its supervisory employees were done pursuant to, and as a result of, one or more of the above de facto practices, policies, and customs of the Cook County Sheriff and COOK COUNTY.

62.     The actions of the individual employees and agents of COOK COUNTY and Cook County Sheriff DART and its supervisory employees in failing to train, supervise, and discipline employees with respect to said actions, involved recurring situations at Cook County Jail and not isolated instances of failure to act.

63.     The practices, policies, and customs described above were widespread, permanent, and well-settled, and were known, or should have been known, to the municipal policy-makers of COOK COUNTY.

13

64.     The municipal policy-makers of COOK COUNTY acted with deliberate indifference to the rights of plaintiff in maintaining, overlooking, and preserving the unconstitutional practices, policies, and customs delineated above.

65.     By their inaction and failure to correct the above-described practices, policies, and customs, municipal policy-makers tacitly approved and thus indirectly authorized the type of misconduct plaintiff complains of herein.

66.     The practices, policies, and customs described above caused the violation of plaintiff's Fourteenth Amendment rights, as alleged in this Complaint.

## COUNT III – INDEMNIFICATION
## SUPPLEMENTAL STATE CLAIM AGAINST COOK COUNTY, ILLINOIS

67.     Plaintiff hereby incorporates and realleges paragraphs 1 through 65 as though fully set forth herein.

68.     Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/4-6003, and 55 ILCS 5/5-1106, COOK COUNTY, Illinois, is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) for which an independently elected Cook County officer, such as the Cook County Sheriff, as well as his deputies and employees, acting within the scope of their employment, are found liable.

69.     The acts and/or omissions of all individual defendants were committed within the scope of their employment.

70.     In the event that a judgment for compensatory damages is entered against any defendant or defendants, COOK COUNTY, Illinois must pay the judgment as well as the associated attorneys' fees and costs.

14

WHEREFORE, plaintiff, GADDIS CANADA a/k/a KAIRA CANADA, requests

judgment as follows against the defendants on each and every claim:

1.    That defendants be required to pay plaintiff general damages, including emotional distress, in a sum to be ascertained at a trial of this matter,

2.    That defendants be required to pay plaintiff special damages,

3.    That defendants be required to pay the plaintiff attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other applicable provision,

4.    That defendants be required to pay plaintiff exemplary and punitive damages in a sum to be ascertained at a trial of this matter,

5.    That defendants be required to pay plaintiff costs of the suit herein incurred, and

6.    That plaintiff be granted such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**.


Dated: March 22, 2018                    /s/ Irene K. Dymkar
                                        Irene K. Dymkar

Attorney for Plaintiff

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604-3462
(312) 345-0123

15